**John Philip McDONNELL, Jr., Petitioner**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 03PDJ063.**

Jan. 23, 2004.

Opinion issued by a Hearing Board consisting of Presiding Officer GAIL C. HARRISS, and BARBARA WEIL LAFF, both members of the bar, and MELINDA M. HARPER, a representative of the public.

---

## OPINION AND ORDER READMITTING JOHN PHILIP MCDONNELL, JR. TO THE PRACTICE OF LAW

### *ATTORNEY READMITTED TO THE PRACTICE OF LAW*

On December 11, 2003, a readmission hearing was held pursuant to C.R.C.P. 251.29(a) before a Hearing Board consisting of the Presiding Officer Gail C. Harriss, a member of the bar, and two hearing board members, Melinda M. Harper, a representative of the public and Barbara Weil Laff, a member of the bar. Alexander R. Rothrock represented John P. McDonnell, Jr. ("McDonnell"). James S. Sudler, Assistant Attorney Regulation Counsel, represented the People of the State of Colorado (the "People"). The following witnesses testified on behalf of McDonnell: Sheryl S. Branney, Michael E. Canges, Francine S. Salazar, Laurinda L. McDonnell, Michael H. Gendel, M.D., Mark L. Held, Ph.D., and Andrew F. Czopek, Ph.D. McDonnell also testified on his own behalf. McDonnell's exhibits 1 through 6 were admitted into evidence.

The Hearing Board considered the testimony and exhibits admitted as well as a Stipulation signed by the parties; addressed the credibility of the witnesses; and made

the following findings of fact, which were established by clear and convincing evidence.

## I. FINDINGS OF FACT

John Philip McDonnell, Jr. took the oath of admission and was admitted to the bar of the State of Colorado on October 21, 1981. The Supreme Court accepted the parties' Conditional Admission of Misconduct and disbarred McDonnell from the practice of law in Colorado on June 19, 1995, effective on that date. *People v. McDonnell,* 897 P.2d 829, 830 (Colo.1995).

After graduating from law school in 1981, McDonnell was employed by a small firm until 1986, when he decided to open his own law practice. His firm enjoyed moderate success and a growing clientele. His wife joined the firm upon her graduation from law school in 1987. McDonnell moved the firm to a larger office and hired staff. A change in policy by one of the firm's main clients resulted in a sudden decrease in firm revenue.

During this time, McDonnell turned increasingly to alcohol to relieve stress. Then, in August 1990, McDonnell's father—an important figure in his life—died suddenly. For many months thereafter, McDonnell dealt with his father's business affairs and tried to run his law practice. He improvidently moved his firm to even larger office space, thereby increasing overhead at a time when firm revenues were on the decline. McDonnell attributes this poor business judgment to muddled thinking following the death of his father, magnified by the effects of alcohol.

In June 1992, McDonnell's wife was expecting their third child and ceased working at the firm to be at home with the children. This caused added financial stress to McDonnell. Due to the increased need for a predictable income, in August 1993, McDonnell accepted a position as an associate attorney with an insurance defense firm. He closed his firm, but remained obligated for the firm's debts. During this time frame, McDonnell did not speak openly to the firm, to friends, or to his wife about his financial difficulties. Instead, he turned to alcohol.

He believed at the time that he could quit drinking at any time. He frequently began drinking early in the afternoon, and was consequently not present in his firm office during the afternoon hours. He failed to accomplish necessary tasks on his cases.

In one of the cases he handled during this period, McDonnell represented an insurance company in a subrogation case. He received a settlement check made payable to both the insurance company and himself. The firm's bookkeeper deposited the check in the firm's trust account and issued a check to the insurance company in the amount of $8,850.35. McDonnell obtained this check in order to deliver it to the insurance company. Instead of doing so, he forged the name of a representative of the insurance company and deposited the check into his own account. McDonnell took the funds to pay his debts, believing that he could repay them when the firm paid him an expected bonus. McDonnell also converted "small" amounts of funds belonging to two former insurance company clients. He concealed his use of the funds from the firm and from the client, assuring the client that the funds were forthcoming. Shortly thereafter, the firm suspended McDonnell's employment with the firm, began auditing his files, and discovered that McDonnell had utilized the funds belonging to the insurance company. The firm subsequently terminated McDonnell's employment. McDonnell was immediately suspended from the practice of law by Order of the Supreme Court on April 28, 1994, pending resolution of the disciplinary action against him.[1]

As a result of the conversion of client funds, criminal charges were filed against McDonnell in the District Court for Arapahoe County. McDonnell pled guilty to felony theft and misdemeanor theft and received a deferred judgment on a plea to fourth degree felony theft. McDonnell complied with all terms of his probation and deferred judgment.

McDonnell "hit bottom" during the period of January to March 1994. He had lost his employment, was suspended from the prac-

---

1. Complete restitution was paid to the client pri- or to the immediate suspension.

tice of law, had incurred substantial debt, and had lost the trust of his wife. Beginning in March 1994, McDonnell set out to rebuild his personal and professional life. He dates his sobriety from March 11, 1994. He participated in an outpatient alcohol rehabilitation program for the remainder of 1994 and most of 1995. Over the past nine years, McDonnell has undergone individual and marital counseling. He and his wife worked together to rebuild trust and remain together as a family. He is now open and honest in his communications with his wife and others. He has developed a strong support system extending beyond his family. He regularly attends Colorado Lawyers Health Program ("CLHP") meetings and continues in individual therapy.

McDonnell returned to work in June 1994 as an attorney's legal assistant. After two years in this position, McDonnell accepted employment as a personal assistant to the late Joseph J. Branney. McDonnell provided paralegal assistance to Mr. Branney in his law practice. He also came to earn the trust of Mrs. Branney, and he acted as a business and financial assistant to Mr. and Mrs. Branney. McDonnell paid the Branneys' personal bills, oversaw their investments, interacted with Mr. Branney's business partners, and routinely transferred funds between various bank accounts. In this role, McDonnell demonstrated honesty and trustworthiness.

In addition to responsibly handling funds belonging to the Branneys, McDonnell has handled funds for neighborhood organizations and in his volunteer work with his church. He acted as co-treasurer for the charity auctions for two consecutive years. He currently acts as a bookkeeper and makes all the deposits for his wife's law firm.

In September 2000, McDonnell obtained paralegal employment with a law firm in Denver. He was considered organized, punctual, detail-oriented, and reliable. As a paralegal, McDonnell demonstrated competence in handling multiple responsibilities under demanding conditions. McDonnell will be offered a position with the firm in the event of his readmission, if the firm is able to do so.

McDonnell sat for and passed the February 2003 Bar Examination and the March 2003 Multistate Professional Responsibility Examination. He has earned sixty-one credits for Continuing Legal Education seminars that he attended in the past three years, and has read several legal publications on a monthly basis including *The Colorado Lawyer*.

Since his disbarment, McDonnell has been involved in several charitable and community service activities. He has served as the president of his neighborhood homeowners' association and the president of a metropolitan district. He has been actively involved with his three children's academic and sports activities as a soccer and baseball coach, academic tutor, Boy Scout den leader, discussion leader in a great books program, and volunteer at his children's schools. He and his family volunteer at two shelters for the homeless and are involved in charitable activities through their church.

McDonnell was candid and open in discussing the character flaws that led to his conversion of client funds. He demonstrated an appreciation for the wrongfulness of his conduct. He expressed remorse for the harm he caused his client, the firm for which he was employed, his wife and family, and the legal profession. He accepted full responsibility for his actions.

McDonnell has maintained his sobriety since March 11, 1994, and has received treatment to remain sober. Given the stability of McDonnell's recovery, he is very likely to maintain his sobriety. The Hearing Board finds it is extremely unlikely that McDonnell would engage in the conduct that led to his disbarment, if he maintains his sobriety.

## II. CONCLUSIONS OF LAW

John P. McDonnell, Jr., is subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b).

C.R.C.P. 251.29(a) provides:

**Readmission After Disbarment.** A disbarred attorney may not apply for readmission until at least eight years after the effective date of the order of disbarment. To be eligible for readmission the attorney

must demonstrate the attorney's fitness to practice law and professional competence, and must successfully complete the written examination for admission to the Bar. The attorney must file a petition for readmission, properly verified, with the Presiding Disciplinary Judge, and furnish a copy to the Regulation Counsel. Thereafter, the petition shall be heard in procedures identical to those outlined by these rules governing hearings of complaints, except it is the attorney who must demonstrate by clear and convincing evidence the attorney's rehabilitation and full compliance with all applicable disciplinary orders and with all provisions of this Chapter. A Hearing Board shall consider every petition for readmission and shall enter an order granting or denying readmission.

*People v. Klein,* 756 P.2d 1013, 1016 (Colo. 1988), interprets the language of the prior rule governing readmission to the bar, C.R.C.P. 241.22, and sets forth criteria which must be considered in reinstatement proceedings in order to evaluate an attorneys rehabilitation. *Klein* requires:

> [A]ny determination of that issue [rehabilitation] must include consideration of numerous factors bearing on the respondents state of mind and ability, such as character, conduct since the imposition of the original discipline, professional competence, candor and sincerity, recommendations of other witnesses, present business pursuits of the respondent, the personal and community service aspects of the respondents life, and the respondents recognition of the seriousness of his previous misconduct.

An attorney seeking readmission following disbarment must establish compliance with the provisions of C.R.C.P. 251.29(c). Those provisions are as follows:

> The facts other than the passage of time and the absence of additional misconduct upon which the petitioning attorney relies to establish that the attorney possesses all of the qualifications required of applicants for admission to the Bar of Colorado, fully considering the previous disciplinary action taken against the attorney;

> Evidence of compliance with all applicable disciplinary orders and with all provisions of this chapter regarding actions required of suspended attorneys;

> Evidence of efforts to maintain professional competence through continuing legal education or otherwise during the period of suspension.

■ On September 6, 2003 McDonnell filed a Verified Petition for Readmission. The parties stipulated that McDonnell complied with all applicable orders and all provisions of C.R.C.P. 251.29(a) in both the criminal and disciplinary proceedings. The parties further stipulated that McDonnell is fit to practice law and professionally competent to do so. McDonnell established his efforts to maintain professional competence by passing the Colorado Bar Examination and the Multistate Professional Responsibility Exam. He has also established proficiency in the law while working as a paralegal for the last nine and one-half years. He has remained current in the law by attending Continuing Legal Education seminars and reading legal journals.

■ Imposition of discipline against an attorney includes a determination that some professional or personal shortcoming existed upon which the discipline is premised. The shortcomings may have resulted either from personal deficits or from a combination of personal deficits and professional and/or environmental inadequacies. It necessarily follows that an analysis of rehabilitation should be directed at the professional or moral shortcomings which resulted in the discipline imposed. *See* C.R.C.P. 251.29(c)(5); *Tardiff v. State Bar,* 27 Cal.3d 395, 165 Cal.Rptr. 829, 612 P.2d 919, 923(1980) (*citing Roth v. State Bar,* 40 Cal.2d 307, 253 P.2d 969, 972 (1953) (holding that in an application for reinstatement ... the proof presented must be sufficient to overcome the courts former adverse judgment of [the] applicants character)). In order to be readmitted to the practice of law, a lawyer must establish that the character deficits present at the time of the misconduct have since been eliminated, so as to insure that similar misconduct does not occur in the future.

McDonnell's knowing conversion of client funds in September 1993 reveals character deficits present at the time the conversion occurred. The primary character deficit resulted from McDonnell's alcohol abuse. Additional character deficits included McDonnell's inability to communicate honestly and openly with his family regarding his difficulties and his failure to have a support system with whom he could discuss his difficulties and seek assistance. McDonnell established that he has remained sober since March 1994, and continues to be committed to sobriety. In 1994, he entered an outpatient alcohol rehabilitation program. Over the last nine years and with a great deal of dedication, he and his family reestablished a relationship built on trust. He remains committed to his family and he is particularly determined to becoming a role model for his children. He has worked hard on his abilities to communicate with his family and friends and be truthful with them. He established a support system to assist him should he ever face desperate circumstances again. McDonnell has acquired the tools to live a sober and productive life.

The character deficit evident at the time of McDonnell's conversion involved lack of honesty and good judgment handling client funds. McDonnell has demonstrated his trustworthiness as an employee and civic volunteer over an extended period of time by accepting and successfully completing work assignments, and has demonstrated honesty and integrity in handling both personal, professional and charitable monetary accounts.

McDonnell demonstrated by clear and convincing evidence that he has undergone a fundamental character change. He unequivocally acknowledges the wrongfulness of his conduct and demonstrates remorse for his misconduct. He accepts responsibility for his actions and does not blame others for his conduct or the consequences stemming from that conduct.

The Hearing Board orders that McDonnell shall be readmitted to the practice of law, McDonnell having established by a clear and convincing standard his compliance with all past orders of court, his fitness to practice law, and his rehabilitation. However, the Hearing Board is charged with the serious role of protecting the public. Although the evidence established McDonnell's nine year record of sobriety, there is always a possibility of relapse, despite the best record of sobriety. In order to ensure the publics safety over the first period of McDonnell's return to the practice of law, the Hearing Board imposes the condition of random urinalysis testing once a month for a period of twelve months through a facility convenient to McDonnell.

## III. ORDER

It is therefore ORDERED:

McDonnell's Petition for Readmission is GRANTED effective upon McDonnell's completion of the conditions in paragraph 3 below. McDonnell shall immediately notify the Office of the Presiding Disciplinary Judge of his compliance so that notification can be sent out of McDonnell's readmission.

2. McDonnell shall be subject to a monthly random urinalysis test during a period of twelve months commencing one month from the date of this Order. The Office of Attorney Regulation Counsel shall receive a monthly report of the random testing from the facility chosen by McDonnell. McDonnell shall pay for the costs of the testing.

3. McDonnell shall appear before the Office of Attorney Registration, pay the registration fees and complete the necessary paperwork and thereafter take the oath of admission from that office;

4. McDonnell shall pay the costs of these proceedings. Respondent shall file a Statement of Costs within fifteen days (15) of the date of this Order; McDonnell shall file a Response thereto within ten (10) days of receipt of the Statement of Costs.